IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

```
FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
Apr 28, 2020, 9:09 am
SUE BEITIA, CLERK
```

BRIAN EVANS, Plaintiff, Pro Se

v.

FIDELITY BROKERAGE SERVICES, LLC, Defendant

NOAH SORKIN, Individually

DOES 1-10

CASE NUMBER 1:20-cv-00111-JAO-RT

FIRST AMENDED COMPLAINT

FOR NEGLIGENT MISREPRESENTATION;

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;

FRAUD

DEMAND FOR JURY TRIAL

## INTRODUCTION

1. This case arises from the Defendants, who negligently handled his account with Fidelity Brokerage Services, which resulted in the loss of over $325,000, Plaintiff's entire inheritance by his mother, due to the Negligent Misrepresentations and Fraud by the Defendants.
2. Plaintiff alleges that Fidelity Brokerage Services ignored their own standards and practices, and their own Terms of Service Agreement when Plaintiff originally opened his account in 2016, by Negligent Misrepresentation that resulted in catastrophic losses to his account. Following the losses, Co-Defendant Sorkin and other customer service representatives with Co-Defendant Fidelity's customer service department, again, in recorded calls, admitted that the Plaintiff was given false information by their other customer service representatives who answer the phones at Fidelity.

1

3. On or about October 1, 2018, Co-Defendant Fidelity Brokerage Services force-sold stock holdings, regardless of the fact that the Plaintiff had the cash in the account to cover whatever happened with the sales of Plaintiffs due to a DOES Defendant customer service representatives Negligent Fidelity representative's negligent misrepresentation, which are a series recorded misrepresentations as stated by Fidelity representatives who make that clear whenever a customer calls), that resulted in catastrophic losses to the Plaintiff. The stock that was bought and sold amounted to over $325,000. The false information provided to the Plaintiff, by the Co-Defendants, were that he could hold certain securities "overnight," but then Co-Defendants "Risk Management Account," despite the Plaintiff having enough cash in his account to cover whatever might have occurred with the various stock, sold them just about 13 minutes before the market closed and without any reasonable warning, which is hardly reasonable in terms of the time to discuss what was being done. That same day, prior to the sell-off, customer service representatives for Fidelity, in recorded calls, stated to the Plaintiff that there was no risk in purchasing those securities and holding them overnight.

4. Plaintiff then advised the legal department of his intent to pursue a FINRA claim. The case involved a settlement agreement, that Plaintiff contends was not adhered to as promised, with several emails from Co-Defendant Noah Sarkin stating various promises that specifically claimed could not be "in the settlement agreement" but would occur. Plaintiff contends that the settlement agreement was entered into to simply get rid of the Plaintiff with no intention of carrying out the terms of the settlement agreement simply because Plaintiff was at the time, the nominee for US Congress in Hawaii, which Co-Defendant stated to Plaintiff. The settlement terms were then not adhered to.

5. Plaintiff contends that when the settlement agreement was not adhered to, that he filed a new FINRA claim, and it was FINRA's specific statement to Plaintiff that the claims should be brought to Court for undisclosed reasons (and what Plaintiff could find online is, the denial code pertained to a "threat"). The Plaintiff had no idea what "threat" the Plaintiff caused, or if it was an internal one within FINRA staff or arbitrators over me filing the claim, or even by someone with Fidelity itself). In fact, the reason provided is still a confusion to this day, but it was nevertheless recommended by FINRA, during a phone call, that Plaintiff should seek relief in Federal Court. Courts have agreed that

FINRA has made decisions contrary to logic before, and intercepted. see *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Schwarzwaelder, Case No. 11-0107 (USDC W.D. Pa. May 17, 2011)*. In this present case, it was actually FINRA's representative who advised the Plaintiff *to* file a lawsuit in Federal Court.

6. Plaintiff is in therapy over the emotional stress and trauma of seeing his entire inheritance disappear due to the negligence and negligent misrepresentations.

## JURISDICTION AND VENUE

This Court has jurisdiction over this action pursuant to 28 USC 1332 (diversity jurisdiction). The Defendants also operate a national business and online accounts and services, including the State of Hawaii. Additionally, Plaintiff was a resident of Hawaii at the time of opening the online account, which was done online from his residence on Maui in approximately 2016 and still is.

## PARTIES

Plaintiff, Brian Evans, is a resident and domiciled in the State of Hawaii, City of Kihei, Maui County

Co-Defendant, Fidelity Brokerage Services, LLC, a Delaware LLC., a subsidiary of FMR, LLC, a privately held multinational financial services firm organized by Delaware law. FMR's majority owner is Abigail Pierrepont, who is a citizen and domiciled in Milton, Massachusetts. Other family members, including Ms. Pierrepont, own a total of 49% of the company, but no individual or any of the remaining 51% ownership of FMR, LLC own more than Abigail Pierrepont, CEO of FMR, LLC. Plaintiff will continue to seek the remaining ownership through Discovery as Defendants have refused to provide the Plaintiff with this information despite all best efforts to obtain this information, including phone calls and emails and hours upon hours of research online. There is simply nothing reasonably available to the Plaintiff to obtain this information despite, as stated above, hours of unsuccessful research. Co-Defendant Fidelity refused to provide this information to the Plaintiff.

Co-Defendant Noah Sarkin is a citizen and domiciled in Boston, Massachusetts, and an employee of Fidelity Brokerage Services, LLC.

## LEGAL FRAMEWORK

To amount to a misrepresentation, the statement must be untrue or seriously misleading. (R v. Kylsant, 1931) A statement which is "technically true" but which gives a misleading impression is deemed an "untrue statement" (Krakowski v. Eurolnx). If a misstatement is made and later the representor finds that it is false, it becomes fraudulent unless the representer updates the other party. (Lockhart v. Osman 1981, VR 57). If the statement is true at the time, but becomes untrue due to a change in circumstances, the representor must update the original statement (With v. Flanagan 1936, Ch. 575, 584). Actionable misrepresentations must be misstatements of fact or law (Kleinwort Benson v. Lincoln City Council (1999), misstatements of opinion. If one party appears to have specialist knowledge of the topic, his "opinions" may be considered actionable misstatements of fact (Esso Petroleum Co. Ltd. v. Mardon (1976) 2 Lloy'd Rep 305, and Smith V. Land Pro (1884) 28 Ch. D 7.

Courts construe liberally pro se pleadings. Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). Courts "must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff" Paradise Divers, Inc. v. Upmal, 402 F.3d 1087, 1089 (11th Cir. 2005) (citation omitted)

## FACTUAL ALLEGATIONS

1. Co-Defendant Fidelity Brokerage Services, on or about October 1, 2018, customer services representatives gave to the Plaintiff false and misleading information, which is not in their Member Agreement or standards of practice. There is no provision in any of their Agreements that waives a client's rights due to false information being provided by their employees. The Defendants conduct cost the Plaintiff over $325,000, by force selling stock despite contrary to and recorded phone calls between Plaintiff and Co-Defendant Fidelity's customer service department which claimed Plaintiff could hold the stock overnight, and would suffer no consequences in doing so. The stock he was force sold from then rose to $57 a share, three times what Plaintiff had purchased, among other transactions the Plaintiff conducted through negligent misrepresentations made

over the phone in recorded calls. In fact, several employees would provide different information to the Plaintiff which further caused losses.

2.  Co-Defendant Noah Sarkin, an employee of Fidelity Brokerage Services, LLC, then attempted to settle the matter through FINRA, but breached various terms of a settlement agreement that was entered into through FINRA, and outside of the settlement agreement that will be proven, and he did so in writing. Co-Defendant also admitted to the Plaintiff that Fidelity Brokerage Services, LLC did not handle Plaintiff's account correctly that this was the cause of his losses.

## CAUSES OF ACTION

1. Plaintiff believes he has been the victim of Negligent Misrepresentation by both Co-Defendant Fidelity Brokerage Services when customer service representatives provided him with false and incorrect information that resulted in catastrophic losses to the Plaintiff.
2. Co-Defendant Noah Sarkin entered into a settlement agreement that was not adhered to by himself, or on behalf of Fidelity. False Misrepresentation is also the cause of action as it pertains to this Defendant.
3. That both Defendants have caused Plaintiff Intentional Infliction of Emotional Distress. There is no more severe emotional distress that can be caused than to lose everything instantly. Plaintiff suffered extreme emotional distress when not only was his account wiped out, but then while still reeling from a wrongful death trial of his mother just six weeks before, saw most of the wrongful death settlement proceeds which took seven years to get to court on in terms of the wrongful death trial gone in seconds. That money was my mother's justice, not play money for the Co-Defendants as they provided false and misleading recorded information over numerous phone calls, calls recorded by the Co-Defendant Fidelity themselves. Knowing where this money came from, and in no mental condition to do so, Defendants conspired to take advantage of the Plaintiffs personal circumstances in order to get him to sign a settlement agreement that they did not completely adhere to. The

5

Plaintiff will show personal emails from Co-Defendant Noah Sorken that make these allegations clear and make promises outside of the settlement agreement, which specifically stated were agreed to, but couldn't be added for reasons unknown, perhaps this one. A lawsuit.

4. Plaintiff alleges fraud by Co-Defendant Fidelity. If a misstatement is made and later the representor finds that it is false, it becomes fraudulent unless the representor updates the other party. (Lockhart v. Osman 1981, VR 57). At no time did anyone from customer service of Co-Defendant Fidelity attempt to contact the Plaintiff to advise him that the recorded statements to the Plaintiff was false information, statements that resulted in his losses. Co-Defendant Noah Sarkin never intended to adhere to the settlement agreement that was entered into, as emails will confirm.

## REQUEST FOR RELIEF

A. For compensatory damages in an amount to be proven at trial, but in an amount over $75,000;

B. For punitive and exemplary damages for an amount to be proven at trial;

C. For other such relief as the Court deems just and proper.

## **JURY TRIAL DEMANDED**

Respectfully submitted,

BRIAN EVANS,

PLAINTIFF, PRO SE

April 23rd, 2020